THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TIMMY L. ODOM, Defendant-Appellant.

Third District   No. 79-91

Opinion filed May 5, 1980.

Robert Agostinelli and Charles W. Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (Thomas R. Lamont and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Timmy L. Odom, was charged by information with the possession of more than 30 but less than 500 grams of cannabis in violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1977, ch. 56½, par. 704(d)). Following a stipulated bench trial, the defendant was convicted and sentenced to a one year conditional discharge. The defendant appeals from his conviction on the grounds that the marijuana was illegally seized, and consequently his pretrial motion to suppress the marijuana was improperly denied.

The facts in this case are undisputed. At approximately 3:30 p.m. on October 28, 1977, Officer Edward Grossklaus of the Joliet Police Department received a radio dispatch that two white males in a blue pickup truck were supposedly selling marijuana in the vicinity of Herkimer and Van Buren Streets. Upon arriving at that area, Officer Grossklaus observed two white males sitting in a blue Ford pickup. After exiting from his squad car, Officer Grossklaus drew his service revolver and ordered the two men, one of whom was the defendant, Timmy Odom, out of the truck with their hands up. The defendant and his companion got out of the truck and walked to the rear. At the hearing on

the motion to suppress, Officer Grossklaus testified that at the time he ordered the two men out of the truck at gunpoint he did not observe any marijuana.

Officer Anthony Jerisha, Jr., also responded to the radio dispatch, and arrived shortly after Officer Grossklaus. At the time he arrived, another Joliet police officer, Officer Eickhoff, was at the scene, as well as a small group of people. One of these people was William Edwards, a security guard at Joliet Central High School. Edwards had a short conversation with Officer Jerisha and told him that while he was on duty he observed an individual whom he believed to be a student receive a plastic bag from the driver of the blue pickup truck. Edwards told Jerisha that he believed the bag contained marijuana "from just the way that it kind of looked," and thinking that "a sale might be going down of the substance," informed his immediate supervisor who in turn called the police. After finishing his conversation with Edwards, Jerisha heard Officer Grossklaus ask the defendant Odom if he could search the truck. Odom responded negatively to this request, but he did give permission to the officers for a search of his coat, which was located on the seat of the truck. Jerisha then searched the defendant's coat, and found a bottle containing a prescriptive drug and two homemade pipes, one made of lead and the other of red plastic. Jerisha smelled the pipes, which contained some residue or ash, and on the basis of his experience as a police officer recognized the odor of burned marijuana. He also observed a package of Job cigarette papers inside the truck in plain view. Officer Jerisha then opened the glove compartment, which was closed but not locked, and found therein a number of clear plastic bags containing a substance later identified as marijuana.

Following an unsuccessful attempt by the defendant to suppress the marijuana, a stipulated bench trial was held. The testimony of Officers Grossklaus and Jerisha given at the hearing on the motion to suppress was received into evidence. Also stipulated was the testimony of William Edwards, who did not appear at the pretrial suppression hearing. The assistant State's Attorney stated that if Edwards were to testify, he would testify that:

"[A]t approximately 2:25 p.m. on that date [October 28, 1977] he observed a blue pickup truck parked near the High School that would be on Herkimer Street near the cathedral, St. John's Lutheran Church.

At that time he was approximately ten feet from the truck. He observed two white males in the pickup truck. The passenger opened the glove compartment, removed a plastic bag containing the green leafy substance and handed that to the driver.

The driver he would identify as the defendant Timmy Odom. The

driver then handed the bag through the window of the truck towards another student who was there and Mr. Edwards' impression was that he was appearing to sell it."

The defendant presented no evidence during the bench trial, and at its close he was convicted of possession of cannabis.

The defendant's main contention on appeal is that the trial court's denial of his motion to suppress the marijuana was erroneous. After the hearing on the defendant's motion, the court ruled that although the defendant's arrest was patently illegal, the items found pursuant to the search of his jacket were not the fruit of that illegal arrest but were, rather, obtained as the result of his voluntary consent, which it characterized as an "independent intervening" factor. Consequently, the court held that the taint of the illegal arrest did not extend to the search of the jacket and papers in plain view, and the fruit of that search provided Officer Jerisha with probable cause to search the glove compartment. The defendant's motion was, therefore, denied.

We agree with the trial court that the defendant's arrest was illegal. There certainly can be no question that Odom was placed under arrest when he was ordered at gunpoint by Officer Grossklaus to get out of the truck with hands raised, and although the question of whether there was probable cause to arrest Odom is one that requires some analysis, we believe that it must be answered in the negative. An arrest may be made in the absence of a warrant if the arresting officer has reasonable grounds to believe that the person is committing or has committed an offense (Ill. Rév. Stat. 1977, ch. 38, par. 107—2(c)). "Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers [at the time] the arrest was made." (*People v. Clay* (1973), 55 Ill. 2d 501, 504, 304 N.E.2d 280, 282.) Certainly the information Officer Grossklaus personally possessed at the time he arrested Odom did not by itself constitute probable cause. However, it is well settled that a police officer is justified in relying upon information received through official police channels, such as radio dispatch (*e.g., People v. Kahl* (1978), 63 Ill. App. 3d 703, 380 N.E.2d 487). Because the knowledge of one police officer within a department is considered to be the knowledge of all (see *People v. Peak* (1963), 29 Ill. 2d 343, 194 N.E.2d 322), Odom's arrest would be legal if the information received by the Joliet Police Department from the informant Edwards constitutes probable cause to execute a warrantless arrest.

■■ ■ It is our belief that the information supplied by Edwards is insufficient to furnish probable cause for Odom's arrest. If probable cause is to be based upon the information provided by an informant, there must be underlying circumstances showing reason to believe that the informant is credible, and underlying circumstances showing the basis of the

conclusions reached by the informant (*Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509). The defendant does not dispute Edwards' credibility, so therefore our evaluation of his tip is limited to an analysis under the second part of the *Aguilar* test—the basis of the informant's conclusions. In the instant case Edwards believed a marijuana sale was being transacted because he saw Odom hand someone a clear plastic bag containing a substance which looked like marijuana. The belief that an individual has a controlled substance in his possession, simply because the substance looks like it, without more, does not meet the requirements of *Aguilar*, and certainly does not furnish probable cause for an arrest. A similar situation occurred in *People v. Palanza* (1978), 55 Ill. App. 3d 1028, 371 N.E.2d 687. In *Palanza* an informant told the police that the defendant had in his possession a white, crystalline powder which "appeared" to be cocaine. This information was recited in a complaint for a search warrant. We found that the complaint alleged insufficient facts to enable the issuing judge to reach a probable cause determination because "[t]here is no indication as to how the informant or for that matter any other person could tell whether a white substance was cocaine or not some other white substance such as sugar or salt." (55 Ill. App. 3d 1028, 1030, 371 N.E.2d 687, 689.) Likewise, in the case at bar there is no indication as to how Edwards knew the substance in the plastic bag was marijuana. Edwards' conclusion is based upon mere suspicion, and is by itself insufficient to warrant the defendant's arrest (see *People v. Barker* (1979), 72 Ill. App. 3d 466, 391 N.E.2d 214; *People v. Harshbarger* (1974), 24 Ill. App. 3d 335, 321 N.E.2d 138). In addition, although Edwards' tip was partially corroborated by the observations of Officer Grossklaus, the corroboration did not raise Edwards' suspicion to probable cause. In *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, the Supreme Court held that although the informant's tip when received may be devoid of underlying circumstances showing the basis of the informant's knowledge, subsequent corroboration may lend extra support to the informant's reliability so that his information may provide probable cause. The *Spinelli* test is whether the informant's tip, together with the subsequent corroboration, is "as reliable as one which passes *Aguilar's* requirements when standing alone." (393 U.S. 410, 416, 21 L. Ed. 2d 637, 643, 89 S. Ct. 584, 589.) Here, the tip was partially corroborated when Officer Grossklaus observed two white males in a blue Ford pickup truck at the place designated. However, nothing Officer Grossklaus observed cured the basic weakness in Edwards' tip, *i.e.*, a lack of information as to how he knew the substance in the plastic bags was marijuana. For this reason the tip here, even with corroboration, does not satisfy *Aguilar*.

■■ Our agreement with the finding of the trial court that Odom's arrest

was illegal leaves us to consider the propriety of the search of his jacket. The trial court found that the defendant voluntarily consented to a search of his jacket, and as a consequence of the voluntary consent any taint of the illegal arrest was attenuated. We agree that the consent to search the jacket was voluntarily given by Odom. The test used in determining the voluntariness of a consent to search is the totality of the circumstances. (*United States v. Watson* (1976), 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820; *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041; *People v. Demorrow* (1974), 59 Ill. 2d 352, 320 N.E.2d 1.) Although an accused's knowledge that he has a right to refuse consent to search is one factor to be used in determining voluntariness, it is not, by itself, determinative. (*Schneckloth*; *United States v. Rothman* (9th Cir. 1973), 492 F.2d 1260.) "Rather, it is only by analyzing all of the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced." (*Schneckloth*, 412 U.S. 218, 233, 36 L. Ed. 2d 854, 866, 93 S. Ct. 2041, 2050.) Here, Odom, shortly after being arrested, was asked by Officer Grossklaus if he (Grossklaus) could search the truck. Odom told Grossklaus that he could not, but could search his jacket on the seat of the truck. Obviously, Odom not only knew he had the right to refuse a search, but exercised that right in refusing consent to search a truck. This is not a case where an arrestee's "will was overborne and his capacity for self determination critically impaired" so as to make the consent to search the jacket involuntary. (*Schneckloth*.) Were we to so find, Odom's refusal to give permission for a search of the truck could not be explained. Just as his refusal to allow a search of the truck reflects an unconstrained and free choice, his consent to search the jacket was voluntarily given, and the admission or utilization of the fruits of that search would not violate due process.

However, a finding that the defendant's consent to search was voluntarily given is but one step in the determination of the propriety of the search, because even if the consent were voluntary it still may have been obtained by the exploitation of an illegal arrest. The United States Supreme Court has held that in the case of voluntarily given confessions, voluntariness for fifth amendment purposes is but a threshold requirement for fourth amendment analysis. (*Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248; *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.) Although in situations involving consent, voluntariness is not examined in light of the fifth amendment, as it is in confession cases, such a distinction is beside the point. What is of concern is whether some inculpatory action by an arrestee, albeit voluntary, was obtained by the exploitation of an illegal arrest by a police officer, which as a consequence violates the constitutional safeguards of the fourth amendment so as to require application

of the exclusionary rule. The inculpatory action on the part of the arrestee can take the form of a consent to search just as easily as it can a confession, and for purposes of the fourth amendment there is no substantive difference between the two. We see no reason why *Brown* and its progeny should not be extended to include cases such as this involving a voluntary consent to search given after an illegal arrest. (See *State v. Wrightson* (Del. Super. 1978), 391 A. 2d 227.) Therefore, the question before us is whether Odom's consent was obtained by the exploitation of an illegal arrest, or "by means sufficiently distinguishable to be purged of the preliminary taint." *Brown*, 422 U.S. 590, 599, 45 L. Ed. 2d 416, 424, 95 S. Ct. 2254, 2259, quoting *Wong Sun v. United States* (1963), 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.

In *Brown*, the Supreme Court identified a number of factors to be considered in determining whether a voluntary confession was obtained by the exploitation of an illegal arrest. These factors are the giving of *Miranda* warnings; the temporal proximity of the arrest and the confession; the presence of intervening circumstances, if any, and particularly the purpose and flagrancy of the official misconduct. (*Brown*, 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62.) We find these factors to be equally as applicable in determining whether a voluntary consent to search was sufficiently attenuated by the taint of an illegal arrest. Utilizing these factors, we find that no *Miranda* warnings were given to the arrestee prior to his consent to search, which was given no more than a minute after his arrest. There were no intervening circumstances, and the police conduct was particularly flagrant. We appreciate the dangers inherent in law enforcement, and realize that police officers must take steps to protect themselves from sudden attack by suspects. However, we see no justification for the gunpoint arrest which occurred in this case when at the time Officer Grossklaus observed the defendant he was not doing anything illegal and there was absolutely no indication at the time of the arrest that either of the suspects was armed. On the basis of these factors, the inescapable conclusion is that Odom's consent to search was tainted by his illegal arrest, and the items found in the jacket should have been suppressed. With the suppression of the two pipes, no probable cause existed for a search of the glove compartment, and as a consequence the marijuana found therein was illegally seized. The defendant's motion to suppress should have been granted by the trial court, and it was reversible error not to do so.

For the reasons stated herein, the judgment of the Circuit Court of Will County is reversed.

Judgment reversed.

ALLOY and SCOTT, JJ., concur.