THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES STANLEY JOHNSON, Defendant-Appellant.

First District (2nd Division)    No. 80-2691

Opinion filed December 29, 1981.

Jerome Rotenberg, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Michele A. Grimaldi, and Lester M. Joseph, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant was charged with murder and armed violence relating to the death of Albert Owens on October 8, 1979. On June 5, 1980, he was found guilty of all charges after a bench trial and subsequently was sentenced to 20 years imprisonment. Defendant appeals. The dispositive issues presented on review are whether the trial court erred in denying defendant's motion to quash arrest and suppress evidence which had been denied prior to trial but after an evidentiary hearing; and whether the oral admission made by defendant should have been suppressed. For the reasons which follow, we reverse.

Pursuant to defendant's motion to suppress, the following evidence was adduced: Dorothy Rines, defendant's "common-law wife," testified that there was a knock on the door of their apartment, second floor in the 6800 block of South Normal Street, in Chicago, between 7:15-7:30 a.m. on October 13, 1979. She asked who was there and a voice said that it was the police and that she should open the door. Upon opening the door, she saw a policeman standing in the outside hall with a gun pointed at her. Three other policemen were standing in the hall, one armed with a rifle. The police entered the apartment. Rines asked whether they had a search warrant, and a policeman said that the only warrant he needed was in his hand, indicating the gun. She did not consent to the police entering the apartment. One officer walked to the back of the apartment, opened the back door and let in other policemen. There were then six policemen in

the apartment altogether. When she opened the door, defendant was in the living room seated on a couch. When he started walking from the living room, the police told him to stand still and not move. The closet in the hallway leading to the front door was searched, and a handgun and two rifles were taken from it. The closet door had been closed.

Defendant testified at the hearing on his motion to suppress. He was on the couch in the living room when he heard a knock on the door. His wife went to answer it. When he heard some hollering, he walked toward the front door. The police, upon meeting him coming from the front room, told him to stand still, and said they wanted to question him about a murder. Their guns were drawn. They asked him his name. He told them "Charles Stanley Johnson," and they handcuffed him. They then seated him on the couch in the front room while they searched the apartment. The closet door was closed. They found rifles hidden behind clothes on the floor of the closet. He knew nothing about the pistol.

Chicago Police Officer James Higgins testified that at 5:30 a.m., he knocked on the back door of the apartment, which was opened by Investigator William Foley. He walked through a hallway, and saw, through an open closet, two rifles and a pistol. The closet was 10 feet from the front door. He had no warrant. He did not remember whether the closet had a door.

Chicago Police Investigator Richard Solita testified that on October 12, 1979 at 2-2:30 p.m., he received information from an informant that the two men who committed the homicide he was investigating lived at the Normal Street address in Chicago, one in the basement and one on the second floor. The informant had given him information leading to arrests four times in the past. He went to the address to make the arrest at 7:30 a.m. on October 13, 1979. The informant had given a full physical description of the men and said that the one living on the second floor at that address was named Stan. Officer Solita knocked on the basement door and two male occupants of the apartment answered the door and admitted him. At the same time, the other investigators who had been stationed in front of the building arrested two individuals who were climbing through a small basement window attempting to flee. One of the men matched one of the descriptions provided by the informant, but the other did not. Solita then asked the residents of the basement apartment whether anyone living in the building matched the description of the remaining suspect, which was a description of defendant. One of the men said that a person fitting that description lived on the second floor. Solita then knocked on the door of the apartment on the second floor and announced his office. A woman "started screaming and acting hysterical." She opened the door, ran out of the hallway past the police, stopped, went back into the apartment, grabbed a baby and ran past the police. The

door was left open. The police looked inside and observed defendant standing there. He was placed under arrest.

After closing arguments, defendant's motion to suppress was denied.

At trial, the following testimony was heard. Chicago Police Officer James Nelson testified that the victim, Albert Owens, was found lying in the street in the 7100 block of South Halsted Street, Chicago, on October 8, 1979, at about 11 p.m.

Testimony of Richard Solita and James Higgins comported with their statements at the hearing on the motion to suppress. Higgins further testified that he later saw defendant in an interview room at Area 3 Homicide Headquarters. When first asked about the shooting of Owens, defendant denied any knowledge thereof. Later when he was told that the weapon found in his closet was matched through ballistics to the weapon that had fired a bullet found in Owens, defendant said that he wanted to tell the truth and he gave an oral statement. He admitted that he shot at Owens with his .38 pistol and that a Michael Head also shot Owens.

The medical examiner, Dr. Mitra Kaalelkar, testified that the victim died of multiple gunshot wounds. There was a stipulation that if Donald E. Smith, firearms examiner of the Chicago Police Department, were to testify he would state that the .38-caliber bullet taken from the victim's body was fired by the .38-caliber revolver recovered from defendant's closet. It was also stipulated that a .38-caliber bullet found on the sidewalk in the 7100 block of South Halsted Street was also fired from this weapon.

Investigator Craig Cegielski also testified relating to the oral statement made by defendant. The admissions were made by him at about 12 noon. Defendant originally denied any knowledge of the death of Owens. Defendant was left basically alone by police other than for routine questions until about noontime. Investigator Higgins returned from the crime laboratory at 12 noon and related to defendant the findings of the ballistics examination. He then gave his oral statement.

Defendant testified as the only defense witness at trial. He never saw the pistol before it was removed from his closet and he denied any knowledge of the murder of Owens. The police told him that Michael Head had made a statement that he, defendant, had shot Owens, and that the police had also told him of the findings of the ballistics examiner. The police were kicking, hitting and slapping him in an effort to get him to sign a statement. They told him that they were going to charge his brother with the crime whom they knew was on parole and that they could charge his wife as an accessory and place his children with Family Services. He denied making any oral admissions. He finally told an Assistant State's Attorney that he would say anything if they left him alone and stopped harassing him. He made an oral statement to the assistant State's Attorney and admitted that he said, "Okay, I will admit to it."

## I

Defendant first argues the trial court erred in denying his motion to quash arrest and suppress evidence because the police officers lacked probable cause to arrest him without a warrant. He contends that the information given to police by their informant was insufficient in that it did not satisfy the requirements prescribed by *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514. The Supreme Court there held that information provided by an informant, in order to constitute probable cause, must be supported by underlying circumstances showing the basis of the informant's conclusions, as well as his reliability. Defendant in the present case does not question the informant's reliability, but claims that no facts were presented which would support the informant's conclusion that defendant had committed the homicide. Defendant relies upon: *People v. Odom* (1980), 83 Ill. App. 3d 1022, 404 N.E.2d 997, in which information provided police that two men in a pickup truck were selling marijuana was deemed insufficient where there was no showing regarding the basis of the informant's conclusion that the plastic bag containing a leafy substance which he observed contained marijuana; *People v. Palanza* (1978), 55 Ill. App. 3d 1028, 371 N.E.2d 687, where no underlying facts were presented from which an informant could have concluded he observed cocaine; and *People v. Barker* (1979), 72 Ill. App. 3d 466, 391 N.E.2d 214, and *People v. Harshbarger* (1974), 24 Ill. App. 3d 335, 321 N.E.2d 138, in both of which police suspicion of marijuana use was improperly supported by their belief that they smelled it (*Harshbarger*) or observed marijuana "joints" (*Barker*).

■■ The State relies upon an alternative to the "basis of knowledge" prong of the *Aguilar* test set forth in *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, which holds that although an informant's tip may be devoid of underlying circumstances showing the basis of his knowledge, subsequent corroboration may lend support to the informant's reliability so that his information may provide probable cause. The State argues that in the instant case, the informant's knowledge was confirmed by the fact that his descriptions of the offenders and their locations were ultimately corroborated and by one suspect's attempt to flee. In *Odom*, the court rejected a similar argument that the informant's monition was sufficient because it was corroborated by the fact that the officer observed, subsequent to receiving the information, two males in a blue pickup truck in the designated place. (83 Ill. App. 3d 1022, 1026.) Further, the fleeing suspect here was never charged with the homicide. In addition, the fact that defendant's physical appearance corresponded to a description furnished by the informant is not by itself a sufficiently corroborating factor, since all that it tended to prove was that the

informant knew defendant; it did not link defendant to the crime. (*People v. Sturdivant* (1981), 99 Ill. App. 3d 370, 425 N.E.2d 1046, *appeal denied* (1981), 85 Ill. 2d 581.) The corroborating information must support the conclusion that the arrestee and no other person was the individual who had committed the offense. *People v. Sturdivant; People v. Andreat* (1979), 76 Ill. App. 3d 948, 951, 395 N.E.2d 728.

The State's reliance in this regard upon *People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 402 N.E.2d 915, and *McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056, is misplaced. In both cases, the fact that defendants there attempted to flee when confronted by police was one factor which was held to justify their subsequent arrest. In both cases, however, defendants were observed, prior to their arrest, acting suspiciously while attempting to commit the crime later charged. Further, in both cases, the activities of defendants themselves aroused suspicion, rather than that of another suspect. Further *Scarpelli* did not involve an informant. Although *McCray* was so involved, the informant there was purported to have actually observed defendant engage in criminal activity. *McCray*, 386 U.S. 300, 304, 18 L. Ed. 2d 62, 66-67, 87 S. Ct. 1056, 1058-59.

■■■ We hold, under the foregoing circumstances, that the police lacked probable cause when they arrested defendant without a warrant. His arrest was therefore unlawful and should have been quashed, and the items seized in his apartment should have been suppressed. Under this posture of the case, we need not consider the question of whether defendant's warrantless arrest was improper under *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, which proscribes a warrantless arrest of a suspect in his home absent exigent circumstances.

## II

Defendant next contends that his inculpatory oral statement should have been suppressed as the fruit of his unlawful arrest, since there were no intervening circumstances between the arrest and the statement which served to dissipate the taint of the arrest. He relies upon *People v. Williams* (1977), 53 Ill. App. 3d 266, 368 N.E.2d 679, which in turn, was decided on the basis of principles enunciated in *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, and *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407. In *Williams*, the court held that although *Miranda* warnings were given, the causal connection between the improper arrest and the confession is not broken and the inquiry must extend to: the temporal proximity of the arrest and the statement; the existence or absence of intervening circumstances; and the purpose and flagrance of police misconduct in making the arrest. The court in *Williams* found the fact of defendant's illegal arrest without

probable cause for investigative purposes sufficient evidence of police misconduct and also observed that defendant was arrested and immediately taken to the police station to be questioned.

■■ It is evident here that defendant became the object of the police investigation on the basis of the informant's tip and that the arrest was made by virtue of that information. Defendant was arrested and taken to the police station immediately, where he was questioned intermittently until he made the admission. A direct causal relationship between the arrest and the admission was thus established, which precludes any conclusion that defendant's statement may be dissociated from the effects of the illegal arrest. The admission should have been suppressed.

For the foregoing reasons, defendant's conviction must be reversed.

Reversed.

DOWNING and PERLIN, JJ., concur.