THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOHN HARRIS, Defendant-Appellee.

Fifth District   No. 5—85—0577

Opinion filed August 4, 1987.

WELCH, J., dissenting.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Kim G. Noffke, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, and Deborah A. Buer, senior law student, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, John Harris, was charged by indictment with two counts of residential burglary. After the circuit court of St. Clair County determined that defendant was arrested without probable cause, it ruled that evidence obtained from the arrest would be inadmissible against defendant at a subsequent trial for these crimes. The State appeals from the court order suppressing such evidence. The facts are as follows.

On April 16, 1985, at approximately 4 p.m., defendant and Jackie McLean entered the Mid-City Buy and Sell Shop in Belleville, Illinois. Present in the shop at the time were Barbara Wagner, the owner, and her husband, Dale Wagner, a patrolman with the Belleville police department. Patrolman Wagner recognized Jackie McLean and knew that McLean and McLean's frequent companion, Clyde Jines, were the subject of outstanding felony warrants in Madison County. Believing that the defendant was Jines, Wagner went to a nearby business and telephoned the Belleville police department. Wagner told the dispatcher that McLean and Jines were in his wife's shop and that he was going to arrest them. Wagner then returned to the shop, told his wife to leave, and, displaying a gun, arrested McLean and defendant. Wagner testified that although defendant did not protest that he was

not Clyde Jines when Wagner referred to him by that name, defendant did ask Wagner what he was being arrested for, to which Wagner replied "[Y]ou know." Wagner stated that he almost shot defendant because he kept moving.

Barbara Wagner testified that after she left the shop through the back door, a neighborhood woman pointed to a blue automobile parked nearby, exclaiming, "[t]he two guys got out of that car and went in your store." When police officers arrived at the shop a minute or so later, Mrs. Wagner pointed to the blue automobile and said, "[t]hat's the car they were in." The automobile, a 1975 blue Ford Torino, matched a police description of a vehicle that Jines and McLean were driving. David Klingler, one of the officers responding to Wagner's call, checked the license plate on this vehicle and determined that the license plate was stolen. Although a woman at the scene told Klingler that defendant and McLean had gotten out of this vehicle prior to entering the shop, she did not indicate whether defendant or McLean was the driver. Klingler stayed with the vehicle until it was impounded. A subsequent inventory search of the vehicle produced goods taken in two recent St. Clair County burglaries.

At approximately 4:05 p.m., Officers Isenhart, Proksha, and Moore simultaneously arrived at the shop. Isenhart took photographs of the jewelry defendant and McLean had in their immediate possession, then placed the jewelry in a bag and took the bag to the police station. No effort was made to separate the jewelry possessed by defendant from that possessed by McLean. The victim of a recent St. Clair County burglary later identified a charm bracelet from this bag as being hers.

Shortly after arriving, Proksha and Moore handcuffed defendant and McLean and took them to the police station, where it was discovered that defendant was not Clyde Jines and that he had no outstanding warrants. Nonetheless, defendant was incarcerated. Prior to his incarceration, defendant emptied his pockets of various items, including a key to the trunk of a 1975 Ford Grand Torino automobile. While incarcerated, the defendant made certain statements regarding his activities on April 16, 1985, and, at approximately 7 p.m., gave his consent to a search of his residence. The search of the residence allegedly produced additional incriminating evidence. There is no indication in the record that defendant was given *Miranda* warnings prior to interrogation or prior to giving his consent to the search of his residence.

The State concedes that defendant was arrested without probable cause and that, consequently, his arrest was illegal. Nevertheless, the

State urges that, although the fruits of an unlawful arrest are generally inadmissible against the accused (*Wong Sun v. United States* (1963), 371 U.S. 471, 484-85, 9 L. Ed. 2d 441, 453, 83 S. Ct. 407, 416), the evidence in the present case should be admitted because it would have been discovered by means sufficiently distinguishable to be purged of the primary taint. (371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.) Specifically, the State contends that the evidence (1) would have been derived from an independent source (*Segura v. United States* (1984), 468 U.S. 796, 82 L. Ed. 2d 599, 104 S. Ct. 3380), or (2) inevitably would have been discovered. *Nix v. Williams* (1984), 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501.

■ We note at the outset that, under the circumstances of this case, the State has the burden of showing that the allegedly tainted evidence is admissible (see *Brown v. Illinois* (1975), 422 U.S. 590, 604, 45 L. Ed. 2d 416, 427-28, 95 S. Ct. 2254, 2262; see also *People v. Rodriquez* (1987), 153 Ill. App. 3d 652, 505 N.E.2d 1314) and that a reviewing court will not disturb a circuit court's finding on a motion to suppress evidence unless that finding is manifestly erroneous (*People v. Holloway* (1981), 86 Ill. 2d 78, 91, 426 N.E.2d 871, 877).

The State correctly recognizes that the evidence which was suppressed in the case at bar falls into three categories: (1) the evidence found on defendant's person at the shop and at the police station, (2) the evidence found in the vehicle pursuant to the inventory search, and (3) the evidence found at defendant's residence pursuant to defendant's consent. Our analysis of the issues presented in relation to the allegedly inadmissible evidence is as follows.

■ It is well established that a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. (*Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 342.) The record establishes that the only reason defendant was arrested and searched was because he was in the company of Jackie McLean. Thus, it cannot be said that the evidence found on defendant's person at the shop or at the police station was not tainted by the illegal arrest and subject to exclusion. Moreover, as the State presented no proof linking defendant to the items found on McLean or in the suspect vehicle other than the defendant's presence with McLean at the time of arrest, the items found in the suspect vehicle are also tainted by the unlawful arrest and subject to exclusion. *Cf. People v. Holdman* (1977), 51 Ill. App. 3d 484, 490-91, 366 N.E.2d 993, 998 (identification of suspects made pursuant to an unlawful arrest was suppressed).

■■ ■ Assuming that defendant's consent to the search of his residence was voluntary, we must still determine whether such consent was obtained through the exploitation of the unlawful arrest. A court is required to utilize the four factors set forth in *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, in determining whether a voluntary consent is tainted by an unlawful arrest. (*People v. Odom* (1980), 83 Ill. App. 3d 1022, 1027-28, 404 N.E.2d 997, 1002.) Those factors are (1) the giving of *Miranda* warnings; (2) the temporal proximity of the arrest and the confession or consent; (3) the presence of intervening circumstances, if any; and (4) the purpose and flagrancy of the official misconduct. (*Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 426-27, 95 S. Ct. 2254, 2261-62.) While the actions of the police officers in making the unlawful arrest may not have been purposeful or flagrant, the absence of such misconduct merely requires that we require less by way of intervening circumstances to dissipate the taint as compared to cases in which the fourth amendment violation was flagrant. See 4 W. LaFave, Search and Seizure sec. 11.4(g), at 434 (2d ed. 1987).

■■ There is no indication in the record that defendant was given *Miranda* warnings. Moreover, the defendant's consent took place approximately three hours after he was arrested and was obtained while he was in jail. Since the State did not establish the presence of sufficient intervening circumstances between the arrest and the consent, we find that the consent was tainted by the unlawful arrest and that the items obtained in the search instituted pursuant to such consent are subject to exclusion.

■■ ■ The relationship between the inevitable discovery rule and the independent source theory has been described as follows: "[The inevitable discovery rule], in a sense, is a variation upon the 'independent source' theory, but it differs in that the question is not whether the police did in fact acquire certain evidence by reliance upon an untainted source but instead whether evidence found because of a Fourth Amendment violation would inevitably have been discovered lawfully." (4 W. LaFave, Search and Seizure sec. 11.4(a), at 378 (2d ed. 1987).) The State in this case failed to present evidence as to who owned the suspect vehicle. Neither did it attempt to establish any other possible connection between the defendant and the allegedly incriminating items other than the search of defendant's person pursuant to the unlawful arrest, defendant's propinquity to McLean, and the tainted consent. Thus, the State did not show either that they in fact acquired the evidence through reliance on an untainted source or that the evidence unlawfully acquired would have been discovered

lawfully. Although defendant may have been lawfully detained pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, so that his identity could be verified, we note that defendant had no outstanding warrants at the time he was apprehended and that there is no indication in the record that the police ever checked the registration of the suspect vehicle. Under these circumstances, the circuit court properly could have found that the police did not exercise diligence sufficient to support a limited intrusion under *Terry*. See *United States v. Place* (1983), 462 U.S. 696, 709-10, 77 L. Ed. 2d 110, 122-23, 103 S. Ct. 2637, 2645-46.

Since the circuit court's findings are not manifestly erroneous, we reject the State's argument that the evidence against defendant was acquired by means sufficient to purge the taint of the unlawful arrest. The judgment of the circuit court of St. Clair County is, therefore, affirmed.

Affirmed.

HARRISON, J., concurs.

JUSTICE WELCH,[1] dissenting:

I agree with the majority's finding that mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. However, in this case, the facts reveal more than mere propinquity. Defendant was initially suspected of being a felon, Clyde Jines, with an outstanding warrant. At that time Officer Wagner did not have an identification of the suspected felon Jines, except that Jines was traveling with McLean, who was also a felon with an outstanding warrant. Officer Wagner knew and recognized McLean. Furthermore, when arrested defendant neither objected to being called Jines nor offered any identification to indicate that he was not Jines.

I also disagree with majority's finding that the State lacked proof to link defendant to the items found on McLean or in the suspect vehicle. Defendant walked into the pawnshop with McLean and asked the owner how much she was paying for gold and tried to sell her two gold rings. Prior to entering the pawnshop, a neighborhood woman saw McLean and defendant get out of the Ford Torino in which other officers found stolen goods from the Dunn and Neff burglaries. Fur-

---

[1]Justice Welch replaces Justice Jones, who retired after the cause was taken under advisement.

thermore, defendant possessed stolen goods prior to the victim's (Dunn's) discovery of the burglary. In addition, the Neff and Dunn burglaries happened not only in close proximity to the pawnshop but also within hours of each other and within hours of the defendant's arrest at the pawnshop. Thus, I find that the State established more than mere propinquity of the defendant to McLean and as such the items found on McLean and defendant are not subject to exclusion.

Although I agree with the majority's finding that defendant's consent was voluntary, I do not agree with the majority's finding that the consent was obtained through the exploitation of the unlawful arrest. I find, as majority does, that the record does not indicate whether any *Miranda* warnings were given and that the consent was given three hours after arrest and while defendant was in jail. However, I disagree with all other points in the majority's opinion regarding this point.

During the three hours in custody, police properly identified defendant and the goods. Since the arrest was initiated by an honest mistaken identity, the actions of the police officers were not purposeful or flagrant official misconduct. Further, the intervening circumstances dissipated the taint involving the initial arrest, transportation to the station, discovery of defendant's true identity and eventual discovery of the connection of the seized goods with the Dunn and Neff recent burglaries. Since less is required by way of intervening circumstances where there is an absence of any purposeful and flagrant official misconduct, as the majority states, I find these are sufficient intervening circumstances to dissipate the taint of the consent. Thus, the items seized in the search of defendant's home are not subject to exclusion.

In addition, the evidence found on the defendant at the time of the arrest and the search of his home would have been ultimately or inevitably discovered by lawful means. (*Nix v. Williams* (1984), 467 U.S. 431, 444-45, 81 L. Ed. 2d 377, 387-88, 104 S. Ct. 2501, 2509-10.) Especially, in this case, the arresting officer acted in good faith believing defendant was Clyde Jines. The other officers responded in good faith to the arresting officer's call for assistance and to a call to look for a Ford Torino with stolen license plates.

For the foregoing reasons, I would have reversed the trial court's findings.