THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DIMITRU STOICA, Defendant-Appellant.

First District (3rd Division)   No. 86—0333

Opinion filed November 25, 1987.

Daniel J. Stohr, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Ronald Weidhuner, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant Dimitru Stoica was charged by indictment with armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18—2(a)), unlawful restraint (Ill. Rev. Stat. 1983, ch. 38, par. 10—3(a)), four counts of aggravated kidnapping (Ill. Rev. Stat. 1983, ch. 38, pars. 10—2(a)(3), (a)(5)), burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—1(a)), attempted murder (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4, 9—1), three counts of armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2), three counts of aggravated battery (Ill. Rev. Stat. 1983, ch. 38, pars. 12—4(a), (b)(8)), and conspiracy (Ill. Rev. Stat. 1983, ch. 38, par. 8—2). After a bench trial defendant was found guilty of two counts of armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2), all three counts of aggravated battery, conspiracy, and armed robbery. The trial court sentenced defendant to two concurrent nine-year sentences in the Illinois Department of Corrections for the armed robbery and armed violence offenses.

Defendant appeals and contends that he was denied a fair trial and his right to prepare his defense where the trial court denied his motion to produce the State's informant. Additionally, defendant contends that the trial court erroneously denied his motions to quash arrest and suppress evidence, as the police lacked probable cause to arrest and the evidence obtained after defendant's arrest was the fruit of the unlawful arrest.

For the reasons stated below, we affirm the judgment of the circuit court of Cook County.

At trial the victim, Felix Ruiz, an off-duty Chicago policeman, testified that he was driving home from a reunion party at about 3:30 a.m. on June 9, 1984. He became fatigued and pulled his car to the curb near St. Louis Street and Fullerton Avenue in Chicago, and went to sleep. While he slept, a man entered the car on the passenger side and sat next to Ruiz. The man awakened Ruiz and said, "Pal, this is a rough neighborhood. I would like to drive you home." Ruiz said, "No, don't worry about it."

The man then directed Ruiz to drive into a nearby alley. When they were in the alley, the man displayed a white automatic pistol, placed it in the area of Ruiz' stomach, and said, "Give me your money." Ruiz reached into his pocket, pulled out about $15, and threw the money out of the driver's-side window. The offender exited the car from the passenger side. Ruiz opened the driver's-side door and was about to exit the car when he was struck on the side of the face with a steel pipe or baseball bat. He was hit four or five times on the head and a couple of times on his left hand. Ruiz saw three individuals standing nearby. One of them held a gun to Ruiz' left temple. Another said, "Don't kill him." Ruiz then reached into his pocket, pulled out his wallet containing his badge, and said, "I'm a police officer." The offenders grabbed Ruiz' wallet and badge and fled. Ruiz described the offenders to police as three or four white males, 15 to 18 years old. Ruiz also gave a brief description of what the offenders were wearing.

Chicago police officer Thomas Byrne testified that on June 9, 1984, a police officer called him at home to tell him there was a person at the police station who wanted to talk to him about the robbery of an off-duty officer. Byrne spoke briefly over the telephone with the informant, and then met the informant at the station. Byrne testified that "numerous times" before, he had spoken to the same informant regarding cases. Further, Byrne testified that the police had made arrests as the result of the information given by the informant in three different cases involving narcotics.

With regard to the instant case, the informant told Byrne that he (the informant) was with the four robbers, whom he named as Chino, Greg, Soto or Paradise, and Danny, a couple of hours after the offense. The robbers told the informant that they had been driving down the street and began following a car that soon pulled over to the curb. Danny, Chino, and Greg decided to rob the driver. Greg got out of the car, approached Ruiz' car and entered it through the passenger side. Greg "stuck a gun on" Ruiz and asked him to pull into an alley near St. Louis Street. Greg then took Ruiz out of the car and pointed a gun at him. Danny and Chino approached. Danny said, "[N]o, don't kill him, let's just get out of here." Some or all of the four individuals kicked Ruiz and hit him in the head. Then they took Ruiz' wallet, at which time they discovered he was a police officer. The four then fled. They told the informant that they used a silver Chevy Chevette automobile. The automobile was parked near the intersection of Leland and Monticello Streets.

After speaking with the informer, Byrne confirmed that a police

officer had been robbed and obtained the police report of the robbery of Ruiz. The report stated that there were four offenders, that a white metal automatic gun and a baseball bat had been used during the robbery, and that the robbery occurred at or near 2424 North St. Louis Street.

Byrne and two other police officers then drove to the area of Leland and Monticello, where they saw a silver Chevette parked. The officers got out of their car. Byrne heard a noise coming from the first-floor apartment at 4656 North Monticello. They looked up and saw Soto or Paradise, and another person, who was the defendant. Byrne stated that the first-floor apartment window was about 30 feet from the police car. Byrne knew who Soto or Paradise was, since he had seen him on prior occasions and since the police were looking for him with regard to an investigation of a shooting which had occurred several days before. The police also were looking for a white steel automatic gun reportedly used in that prior shooting. Officer Tarara, who accompanied Byrne, told Byrne at that time that he knew Soto as a "gang banger." Byrne and the other officers approached the apartment, knocked on the door, and were admitted. Defendant told police that his name was Danny and that he owned the silver Chevette. The police arrested both Soto and defendant and read them their *Miranda* rights.

Byrne and Tarara brought defendant to the police station, placed him in an interrogation room, and reviewed his *Miranda* rights. Defendant said that he understood his rights. Initially, defendant told the officers that he did not know much about the robbery. After Byrne and Tarara told defendant that his car had been implicated in the robbery, defendant told the officers of his involvement in the incident.

Byrne testified that defendant told him essentially the same story as the informant had told Byrne. Defendant said that he was the driver of the Chevette that night, and that it was he who told Greg not to kill Ruiz. Defendant said that he could lead Byrne to the place where the proceeds of the robbery were located. Police recovered Ruiz' wallet, badge, and identification card from a garbage can in an alley near 3644 North Wrightwood. In addition, with defendant's permission, police recovered a pipe from defendant's car. Further, upon information given by Soto, police recovered a gun from 4656 North Monticello.

Prior to trial, defendant also gave a statement regarding his involvement in the robbery to an assistant State's Attorney. Defendant did not testify at trial.

I

■■ On appeal defendant initially asserts that he was deprived of a fair trial where the trial court denied his pretrial motion to produce the informant and sustained the prosecution's objections during trial to efforts of defense counsel to obtain information regarding the informant. Defendant asserts that, at the least, the trial court should have required an *in camera* inspection to determine the validity of defendant's position.

Prior to trial, the court denied defendant's motion to produce the informant but granted leave to amend, as the motion failed to contain sufficient facts. Defense counsel thereafter filed an amended answer to the State's discovery request, to include Ruth Sanchez as a potential defense witness at trial. Defense counsel stated orally to the court that since the defense had discovered the identity of the informant (*i.e.*, Sanchez), the informant's identity was no longer a prosecutorial secret and the informer's privilege no longer existed. Defense counsel orally requested an *in camera* hearing concerning disclosure of the informant.

The court ordered the State to produce any oral statements it had from Ruth Sanchez. At a later date on the continued hearing, the State informed the court that the police officers indicated they did not know a Ruth Sanchez and that Ruth Sanchez was not the informant. The court then told defense counsel that during trial he would be allowed to ask the arresting officer if Ruth Sanchez was the informant. When defense counsel suggested that Sanchez might be known under an alias name, the court stated that counsel also could ask whether the officer knew Sanchez by any other name. The court stated that if the police officer answered negatively to those questions, defense counsel would be permitted no further questioning regarding the identity of the informant.

During cross-examination of Officer Byrne at trial, defense counsel asked Byrne the sex of the informant. The State objected and the court sustained the objection. At a sidebar, defense counsel made an offer of proof that the common law husband of Ruth Sanchez had been in custody at the time the informant gave police the tip and that the husband may also have been an informant. The trial court responded by telling defense counsel, "You can ask if the informant was in custody. Other than that, you are on a fishing expedition here." Byrne testified that the informant was not in custody at the time the informant gave Byrne the tip. Byrne denied knowing Ruth Sanchez.

Defendant asserts on appeal that the trial court's denial of his motion to produce the informant precluded him from attempting to chal-

lenge the veracity of the officer's testimony regarding what the informant told him concerning the robbery and the past relationship between the officer and the informant. Further, defendant asserts, the court's ruling precluded him from attacking the officer's basis for the alleged probable cause to arrest defendant.

Defendant notes that the United States Supreme Court has limited the informer's privilege, where disclosure is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." (*Roviaro v. United States* (1957), 353 U.S. 53, 60-61, 1 L. Ed. 2d 639, 645, 77 S. Ct. 623, 628.) Further, the limitation of the privilege may arise where the legality of the search warrant is in issue and the information of an informant is alleged to establish probable cause. In such a case, the government must disclose the identity of the informant "unless there [is] sufficient evidence apart from his confidential communication." (353 U.S. at 61, 1 L. Ed. 2d at 645, 77 S. Ct. at 628.) Defendant maintains that in the instant case there is not sufficient evidence apart from the informant's communication to establish probable cause, and therefore, the State should have been required to disclose the informant.

*Roviaro* also provides that, in determining whether the privilege applies, the public interest in protecting the flow of information should be balanced against an individual's right to prepare his defense. The circumstances of each case, including the crime charged, the possible defenses, and the possible significance of the informant's testimony, should be considered. *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623. See also Illinois Supreme Court Rule 412(j)(ii) (87 Ill. 2d R. 412(j)(ii)); *People v. Avery* (1978), 61 Ill. App. 3d 327, 377 N.E.2d 1271.

Defendant asserts that the failure to disclose the informant in the instant case infringed his sixth amendment and due process right to present a defense. (*People v. Avery* (1978), 61 Ill. App. 3d 327, 377 N.E.2d 1271; *Washington v. Texas* (1967), 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920; *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038; *People v. Wolfe* (1966), 73 Ill. App. 3d 274, 219 N.E.2d 634.) Defendant asserts that, in the instant case, the State failed to allege that the informer would be in danger if his or her identity were disclosed. (See *People v. Glenn* (1978), 63 Ill. App. 3d 344, 380 N.E.2d 390; *People v. Gibson* (1977), 54 Ill. App. 3d 898, 370 N.E.2d 262.) Defendant contends that just as a defendant challenging an arrest or seizure pursuant to a warrant has the opportunity to show that the officer was not truthful or that he failed to act in good faith (*People v. Garcia* (1982), 109 Ill. App. 3d 142, 440

N.E.2d 269), a defendant challenging a warrantless arrest should have the opportunity to challenge the veracity of the arresting officer who relies solely on an informant's information to establish probable cause (*People v. Clifton* (1969), 42 Ill. 2d 526).

The State responds that the trial court properly denied defendant's motion to produce since the trial court determined the veracity of the officer and allowed defendant the opportunity during cross-examination to establish if in fact the informant was the person defense counsel believed the informant to be. Further, the trial judge was convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant. (*McCray v. Illinois* (1967), 386 U.S. 300, 305, 18 L. Ed. 2d 62, 67, 87 S. Ct. 1056, 1059.) Thus, the State asserts, disclosure of the informant in the instant case was not required.

In reply defendant distinguishes the recent Illinois Supreme Court case of *People v. Lucente* (1987), 116 Ill. 2d 133. *Lucente*, in accord with *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, held that the fourth amendment requires that a hearing be held where defendant makes a "substantial preliminary showing" that an affiant police officer knowingly and intentionally, or with reckless disregard for the truth, made a false statement in a warrant affidavit. Defendant distinguishes the instant case from *Franks* and *Lucente*, since the instant case does not involve an affidavit for a search warrant. Defendant asserts that the "substantial preliminary showing" required by *Franks* therefore need not be shown in the instant case.

We find that the trial court properly denied defendant's motion to produce the informant. The proper application of the informer's privilege involves balancing the strong public policy reasons favoring it against a defendant's need for disclosure in order to prepare his defense. (*Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623; *People v. Williams* (1967), 38 Ill. 2d 150, *cert. denied* (1968), 390 U.S. 983, 19 L. Ed. 2d 1284, 88 S. Ct. 1108.) The burden of showing need is on the defendant, and the Illinois Supreme Court has recognized that where there is no evidence that the informer either participated in the crime or was present at the time of arrest, amplification of an informer's statements would be of little assistance to an offender's defense. *People v. Nettles* (1966), 34 Ill. 2d 52, 55, *cert. denied* (1967), 386 U.S. 1008, 18 L. Ed. 2d 448, 87 S. Ct. 1350; *People v. Duncan* (1982), 104 Ill. App. 3d 701, 705, 432 N.E.2d 1328, 1331.

While there is no fixed rule regarding disclosure (*McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056), if an undisclosed informer has taken an active role in the crime and might be a material State witness during trial, the privilege must give way to the defendant's need to prepare his defense (*Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623). In contrast, if "the issue is the preliminary one of probable cause, and guilt or innocence is not at stake," the nondisclosure of an informer's identity is not error. *McCray v. Illinois* (1967), 386 U.S. 300, 311, 18 L. Ed. 2d 62, 70, 87 S. Ct. 1056, 1062.

In the instant case, the trial court carefully considered this issue before and during trial. The court was well aware that the informer did not set up or participate in the robbery and was not a witness to the incident. Further, as discussed more fully below, the trial court found that Officer Byrne's testimony was credible and had a reliable basis. Therefore, the court properly found that disclosure was not mandated. (*McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056.) Additionally, we note that the trial court gave defense counsel ample opportunity to attempt to identify the informer after claiming that the defense had discovered the name of the informant. The record shows, however, that defense counsel had *not* learned the informant's identity. Further, defense counsel had the opportunity during cross-examination to challenge the truthfulness and reliability of the information testified to by the officer. We find no error here.

## II

■ Defendant also contends that the trial court erroneously denied his motion to quash arrest and suppress evidence, as he was arrested without a warrant and without probable cause, in violation of the fourth amendment. Further, defendant asserts that his confession and the evidence obtained from his car pursuant to his alleged consent also should have been suppressed, as the fruits of his unlawful arrest. *People v. Odom* (1980), 83 Ill. App. 3d 1022, 404 N.E.2d 997.

Defendant asserts that the information provided by the informant, along with defendant's admission that he owned the car police inquired about, failed to establish probable cause to arrest him, particularly since the informant's identity was improperly withheld. (*People v. Ross* (1985), 133 Ill. App. 3d 66, 478 N.E.2d 575; *People v. Williams* (1973), 16 Ill. App. 3d 440, 306 N.E.2d 678.) Defendant asserts that the hearsay statement that the informant was aware of defendant's involvement in the robbery is uncorroborated and lacks a reasonable foundation. Further, defendant asserts that, while Byrne's

testimony that the informant had on three prior occasions provided information resulting in the seizure of narcotics may establish that the informant is reliable in the area of narcotics, it does not reflect on the informant's veracity or reliability in any area other than narcotics investigations.

The State responds that the trial court properly denied defendant's motions to quash arrest and suppress evidence since the arrest was based on probable cause. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317; *People v. Tisler* (1984), 103 Ill. 2d 226, 245-47.) The State further asserts that assuming *arguendo* probable cause to arrest was lacking, defendant's confession and consent to the search of his car were properly relied on by the trial court, as they were voluntarily given after defendant was properly advised of his *Miranda* rights. *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *People v. Townes* (1982), 91 Ill. 2d 322, *cert. denied* (1982), 459 U.S. 878, 74 L. Ed. 2d 143, 103 S. Ct. 174; *People v. Odom* (1980), 83 Ill. App. 3d 1022, 404 N.E.2d 997.

■ We find that the trial court's denials of the motions to quash and suppress were not against the manifest weight of the evidence, and therefore we will not disturb its holdings. (*People v. Tisler* (1984), 103 Ill. 2d 226; *People v. Rodriquez* (1986), 141 Ill. App. 3d 923, 927-28, 491 N.E.2d 53, 58.) When a police officer has made a warrantless arrest, the trial court making a probable cause determination is to apply standards at least as stringent as those that guide a judge in deciding whether to issue a warrant. (*People v. Tisler* (1984), 103 Ill. 2d 226, 246.) In *Tisler*, the Illinois Supreme Court adopted the "totality of the circumstances" standard set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, for resolving probable cause questions under the Illinois Constitution which involve an informant's tip. *People v. Tisler* (1984), 103 Ill. 2d 226, 246.

In the instant case, the totality of the circumstances as shown by the evidence supports the trial court's finding that the informant was credible, the information he provided was reliable, and probable cause existed for defendant's arrest. Byrne testified that the informant had previously given him information which led to three different arrests. The fact that those prior arrests related to offenses involving narcotics and not robbery does not by itself diminish the informant's reliability. Further, the informant's information was specific, in that he told Byrne the robbery involved an off-duty police officer, provided the names of the four individuals allegedly involved in the offense and the type and location of the car used, and gave a detailed sequence of events. This specificity lent credibility to the information. The inform-

ant further provided that the basis of his knowledge was that he was in the presence of the offenders a couple of hours after the offense.

■ Further, prior to arresting defendant, Byrne corroborated many of the facts provided by the informant. Byrne read a police report regarding the robbery of an off-duty police officer which had just occurred; he found the silver Chevette car at the location the informant provided; and he saw Soto, whom he and Officer Tarara knew from previous incidents and whom the informant had named with regard to the subject robbery, in the presence of defendant at the location where the car was found. Further, when asked by police, defendant confirmed that he owned the silver Chevette automobile. In ruling on a motion to suppress, it is the province of the trial court to determine the credibility of the witnesses and the weight to be given their testimony, and such findings will not be disturbed unless they are manifestly erroneous. (*People v. Wiggins* (1976), 45 Ill. App. 3d 85, 358 N.E.2d 1301.) We find no such error in the instant case.

Finally, we note that since we have found that the evidence supported a finding of probable cause to arrest, defendant's argument that the evidence obtained after the arrest were illegal fruits of an unlawful arrest must fail. Further, defendant does not cite anything in the record to indicate that his statements to the police and the assistant State's Attorney and his consent to the search of his car were *not* voluntarily given after defendant was properly advised of his *Miranda* rights.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA, P.J., and RIZZI, J., concur.