THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID FRIEND, Defendant-Appellant.

Second District   No. 2—87—0758

Opinion filed December 28, 1988.—Rehearing denied February 7, 1989.

George P. Lynch, of George Patrick Lynch, Ltd., of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, John X. Breslin, and Terry A. Mertel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, David Friend, was charged by information in the circuit court of Du Page County with one count of unlawful possession of controlled substance (cocaine) with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)), one count of unlawful possession of cannabis with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 705(d)) and one count of unlawful use of a weapon by a felon (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1). This latter charge was nol-prossed on the State's motion and the case dismissed. Defendant's motions to quash arrest and search warrant were denied, and, after a bench trial, he was found guilty of the remaining two charges. His post-trial motion was denied, and he was sentenced to seven and three years' imprisonment, respectively, on the cocaine and cannabis offenses, sen-

tences to be served concurrently. Street value fines in the amount of $8,300 and $1,600 were imposed pursuant to section 5—9—1.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1). Upon the State's amended petition to revoke probation based on the instant offenses, the court revoked the defendant's sentence of 18 months' probation which was imposed upon him in 1984 pursuant to section 410(a) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1410(a)). No additional sentence was imposed following revocation.

■ Defendant appeals from both his convictions and from the revocation of his probation. The appeals were consolidated. Inasmuch as no sentence was entered by the court upon revocation of the defendant's probation, that judgment lacks finality, and the appeal cannot be entertained. (*People v. Caballero* (1984), 102 Ill. 2d 23.) Further, the defendant presents no argument or citation of authority whatsoever in support of his prayer for reversal of the revocation judgment. Accordingly, defendant's appeal from the court's judgment revoking his probation is dismissed.

Defendant raises these issues on appeal from his convictions: (1) whether he was deprived of a fair *Franks* hearing because the court denied his request for disclosure of the identity of the confidential informant; (2) whether the court erred in directing a finding for the State at the conclusion of the *Franks* hearing; (3) whether there was probable cause for the search warrant and, if not, whether the evidence nonetheless was admissible; (4) whether the search warrant was overbroad and, thus, invalid; (5) whether he was deprived of due process due to the court's *ex parte* communications with police officers and its predetermination of his case; (6) whether he was deprived of a fair *Franks* hearing where a defense witness repeatedly asserted her fifth amendment rights in response to questioning by the State; and (7) whether the State's evidence proved beyond a reasonable doubt his intent to deliver.

Chicago detective Andrew Kuchoukos, accompanied by six other Chicago officers and two Hanover Park police officers, went to the premises with a search warrant which the Chicago officers obtained earlier that day. En route to execute the warrant, Kuchoukos encountered the defendant in a vehicle a block away from the premises. The defendant was driving and his girlfriend, Sharon Freeman, and two or three other people were with him. Kuchoukos informed the defendant the officers had a search warrant, and they all went to the premises.

The officers entered to conduct the search after the defendant

handed Kuchoukos a key and Kuchoukos advised the defendant of his *Miranda* rights. The defendant agreed to waive his rights and speak to Kuchoukos. When asked about weapons and contraband, the defendant admitted to having both on the premises and directed Kuchoukos to the second floor and the basement of the premises.

The officers split up and searched different areas of the premises. Various items were recovered during the search, most from a desk or dresser in one of the two bedrooms on the second floor. These items included four bags and two folded pieces of paper, all of which contained a white powdery substance. Laura Mitacek, a forensic chemist, testified she weighed and tested the substances. Three of the bags weighed just over three grams each and contained cocaine. The fourth bag weighed 55.65 grams and also contained cocaine. The powder in the two folded papers consisted of 1.80 and 1.81 grams, respectively, of a substance containing cocaine. A bag containing 3.1 grams of green leafy plant material, determined to be cannabis, was found under the bed in that bedroom. Three other bags of green leafy plant material were found under the steps in the basement and determined to each contain approximately 100 grams of cannabis. A gram scale was found on the dresser, and $2,480 was found in a drawer of the dresser. Two guns were also found in between the mattress and springs of the bed in the bedroom. Two documents addressed to the defendant at 6255 Nugget, Hanover Park, Illinois, were found in a drawer of the dresser. A piece of paper with names and numbers was found in the bedroom either in the dresser area or under the bed. The defendant admitted to police the contraband was his.

The defendant made a pretrial motion to quash the search warrant which alleged that the allegations in the complaint for the warrant were false. Several affidavits were filed in support of the motion. Supplemental affidavits were added, and the court granted the defendant a hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.

The search warrant was issued at 11:35 a.m. on March 6, 1986, in Cook County, based on a complaint signed and sworn to by Kuchoukos. According to the allegations of the complaint, Kuchoukos spoke with a "cooperating individual" whom he had known for over one year and who had given him information regarding narcotics trafficking on numerous occasions. On three of those occasions that were acted upon, narcotic contraband was discovered, analyzed and found to be cocaine. Arrests were made in all those occasions and the causes were pending in the courts of Cook County. The informant told Kuchoukos he went to purchase cocaine from the defendant

at a multi-family structure at 6255 Nugget "in the early morning hours" of March 6. The defendant was described as a male white subject, approximately 30 years old, 6 feet 2 inches tall, 250 pounds, with blue eyes and blonde hair. The informant told Kuchoukos he was admitted to the dwelling by the defendant, told the defendant he wanted to buy one gram of cocaine, and the defendant said it would cost $100. The informant handed that amount to the defendant. The defendant then produced a large clear plastic bag containing white powder. He weighed a small portion of this substance on a scale, placed the substance in a white paper packet and gave it to the informant. The large plastic bag was then placed in the refrigerator. The defendant told the informant the powder in the clear plastic bag was over five ounces of very good quality cocaine which was his supply for the "on-coming" week. Shortly after leaving 6255 Nugget, the informant snorted the powder purchased from the defendant and received the same effects as when he snorted cocaine during the preceding three-year period. Based on this information, which Kuchoukos alleged he believed to be true and correct, Kuchoukos asked that a search warrant be issued for the defendant and the multi-family structure at 6255 Nugget. The affidavits and supplemental affidavits submitted in support of the defendant's motion to quash the search warrant and for a *Franks* hearing detailed the defendant's activities from the early evening of March 5, 1986, until he retired about 5 or 5:30 a.m. and awakened about 12 or 12:30 p.m. on March 6.

The record of the *Franks* hearing reveals the following information. Greg Philips, who signed one of the affidavits supporting the defendant's motion to quash, testified he and his friend, Pat Oakes, were with the defendant between 7 or 7:30 p.m. on March 5 until approximately 1:30 a.m. on March 6. Oakes did not know the defendant previously. At the time of the hearing, Philips did not know Oakes' address; Oakes was in the process of a divorce and was staying with various friends. Philips and Oakes picked up the defendant at his residence and went to the Maywood Park race track in one car. They left the track about midnight and went to a bar in Hanover Park called Fizz. They left Fizz between 1 and 1:15 a.m. on March 6 and returned to the defendant's. Philips and Oakes stayed long enough to use the washroom and left. The defendant did not leave Philips' presence that evening except possibly to use the washroom. Philips did not see anything which appeared to be cocaine in the defendant's residence. Philips testified he was not the informant, and he did not purchase controlled substances from the defendant or anyone else in the premises.

Jeanine Clauss also signed an affidavit in support of the defendant's motion to quash. She testified at the hearing she was at the defendant's residence with the defendant's girlfriend, Sharon Freeman, who also lived in the residence, from about 8 p.m. on March 5 until 4 or 4:30 a.m. on March 6. Clauss, her husband Brian, and her two-year-old son lived across the sidewalk from the defendant's residence. She had been inside defendant's residence "thousands" of times. She stated that she was not sure whether the defendant was with anyone when he returned about 12 midnight or 1 a.m. on March 6. Clauss did not leave the residence from the time the defendant returned until she left for the night. After the defendant returned, Clauss did not see anyone else come in. Clauss testified she was not the informant. She did not see anyone with anything that appeared to be cocaine and did not see such substances in the refrigerator. While at the residence, Clauss was playing cards at a table near the kitchen. Clauss did not see the defendant in the kitchen from the time he got home, when he went upstairs, until after he received a couple of phone calls and he and Freeman left with the dog at approximately 4 a.m.

Debra Kurtz also signed an affidavit in support of defendant's motion to quash. She testified at the hearing she was receiving obscene telephone calls and was scared. She called the defendant several times the evening of March 5 and the early morning of March 6. Ultimately he came to her house between 4 and 4:30 a.m. on March 6. Kurtz testified she phoned the defendant three or four times after he left her apartment, but she did not reach him until about 2 p.m. on March 6. Terri Dolan, who was staying overnight with Kurtz that night, corroborated Kurtz' testimony that the defendant came to Kurtz' residence that night.

Sharon Freeman also signed an affidavit in support of defendant's motion to quash. She testified at the hearing she lived with the defendant for about three years at 6255 Nugget Circle. There was only one kitchen in the premises and there was no refrigerator in the basement. The premises had a first floor, second floor, and a basement. From where she and Clauss were sitting playing cards, they could not see the refrigerator in the kitchen. Freeman testified that in addition to Clauss, Philips and Oakes came to the residence. Freeman did not see the defendant, Philips or Oakes with cocaine. When Philips and Oakes came in with the defendant after returning from the track, Philips and Oakes went to the bathroom in the back of the kitchen and left. Freeman testified she was familiar with what cocaine looked like. Freeman and Clauss continued playing cards and doing

laundry after the defendant came home. Freeman testified the defendant went to bed about 2 a.m., and no one else came to the house thereafter. Debra Kurtz called once while the defendant was at the track and called again about 2 a.m. after he was asleep. Freeman testified Kurtz called again about 3 a.m. and asked Freeman to wake up the defendant because she was scared about some phone calls she was getting and she was home alone with the kids. Freeman refused to wake the defendant at that time, but did wake him when Kurtz called again about 3:30 or 3:45.

Freeman testified she and the defendant went to the home of Debra Kurtz at approximately 4 a.m. and Jeanine Clauss went home at that time. Freeman testified she and the defendant stayed about one-half hour at the Kurtz residence and then returned home and went to bed about 5 a.m. No one else came to the house that morning. Freeman testified there is a portable phone in the bedroom and she woke about noon, when the phone rang and it was Jeanine Clauss. To her knowledge, the defendant did not leave the bedroom prior to the time she awoke. She testified the defendant was in bed with her when she awoke.

Kuchoukos and his supervisor, Michael Maher, also testified. Maher knew of an informant who gave information to the Chicago police which led to the issuance of this warrant. Maher was not involved in the matter prior to the time Kuchoukos submitted the complaint for the warrant to him for his approval. Maher could not recall asking Kuchoukos anything about the informant. Although Maher claimed that he might have, he could not recall if he asked Kuchoukos any questions concerning the allegations of the complaint for the warrant. The Cook County State's Attorney's office and the Du Page County State's Attorney's office were consulted about securing the warrant.

Kuchoukos stated that he signed the complaint for search warrant on March 6 at 11:30 a.m. Kuchoukos testified he had a telephone conversation with the informant at 9 o'clock that morning. Kuchoukos stated the informant told him that he obtained drugs from the defendant, and the informant gave Kuchoukos an address and a physical description of the defendant. The defendant actually was one inch shorter than the description given, but the description of his weight at 250 pounds was considerably more accurate than the most recent LEEDS description on file of the defendant which listed his weight as 60 to 70 pounds lighter than he actually was. The informant indicated the purchase from the defendant occurred "some hours earlier in the morning, the early morning hours of March 6." Kuchoukos could not recall the exact time the informant indicated, if he did indicate a time,

and Kuchoukos stated he made no written report concerning the informant's call. Kuchoukos did not meet with the informant prior to securing the warrant, nor did he go to Hanover Park prior to typing up and obtaining the warrant. He had no independent knowledge to corroborate the telephone conversation in any way, although he contacted the Hanover Park police department to verify occupancy. Sharon Freeman testified later that she had a lease for the first year she lived at 6255 Nugget, but she did not have one for the past three years. The phone number was unpublished and was listed either in her name alone or her name and her brother's, who lived with her for the first year in that residence. Kuchoukos testified no surveillance was done of the defendant's premises prior to securing the warrant. Kuchoukos also testified the informant did not state whether anyone else was present or where in the residence the alleged transaction occurred. The informant described the residence as a four- or six-flat building with apartments on either side. Freeman testified the residence was a "quad," like a townhouse, and had three levels: first floor, second floor, and basement. The informant did not describe the interior of the dwelling to Kuchoukos. Kuchoukos stated that he may have looked in the refrigerator when he executed the search warrant since he usually did so, but he could not specifically recall looking in the refrigerator.

### IDENTITY OF THE CONFIDENTIAL INFORMANT

The defendant's first contention is that he was deprived of a fair *Franks* hearing because the court denied his request for disclosure of the informant. We disagree.

In *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, the court held the fourth amendment requires a hearing be held where the defendant makes a substantial preliminary showing that an affiant police officer knowingly and intentionally, or with reckless disregard for the truth, made a false statement in a warrant affidavit. (Accord *People v. Lucente* (1987), 116 Ill. 2d 133.) The purpose underlying the *Franks* rule is to provide meaningful, albeit limited, deterrence of, and protection against, perjurious warrants. (*Lucente*, 116 Ill. 2d at 149-50.) When a hearing has been granted, as it was here, if under all the circumstances the judge doubts the credibility of the police officer, "the judge may require that the informer be identified or even produced." (*People v. Garcia* (1982), 109 Ill. App. 3d 142, 151, *limited on other grounds by People v. Lucente* (1987), 116 Ill. 2d 133, 144-46, relying on *McCray v. Illinois* (1967), 386 U.S. 300, 307-08, 18 L. Ed. 2d 62, 69, 87 S. Ct. 1056,

1060-61; see also *People v. Allen* (1987), 158 Ill. App. 3d 602, 608.) Inasmuch as the question was not before it there, the court in *Lucente* expressed no opinion on whether, or under what circumstances, an informant should be produced to testify at a *Franks* hearing. (*Lucente*, 116 Ill. 2d at 150.) In *Garcia*, it was noted that the State is not required to expose an informant's identity routinely upon a defendant's demand therefore when there is ample evidence in a suppression hearing to show that the informant is reliable and his information credible. *Garcia*, 109 Ill. App. 3d at 151, n.6.

As stated in *McCray*:

> "When the issue is not guilt or innocence, but, as here, the question of probable cause for an arrest or search, the Illinois Supreme Court has held that police officers need not invariably be required to disclose an informant's identity if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant.
>
> * * *
>
> *** '[I]t should rest entirely with the judge who hears the motion to suppress to decide whether he needs *** disclosure as to the informant in order to decide whether the officer [the affiant] is a believable witness.' " *McCray*, 386 U.S. at 305, 308, 18 L. Ed. 2d at 67, 69, 87 S. Ct. at 1059, 1061, quoting *State v. Burnett* (1964), 42 N.J. 377, 385-88, 201 A.2d 39, 43-45.

"This means that disclosure should be required on occasion, as when some aspect of the police conduct appears inexplicable if an informant actually reported what it is claimed he said." W. LaFave & J. Israel, Criminal Procedure §3.3, at 203 (1984), citing *People v. Clifton* (1969), 42 Ill. 2d 526.

■ The proper application of the informer's privilege involves balancing the strong public policy reasons favoring it against a defendant's need for disclosure in order to prepare his defense. (*Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623; *People v. Stoica* (1987), 163 Ill. App. 3d 660, 666.) The burden of showing the need for disclosure of the informer's identity is on the defendant. (*Stoica*, 163 Ill. App. 3d at 666; *People v. Duncan* (1982), 104 Ill. App. 3d 701.) The informant's privilege must give way where the disclosure of an informant's identity is relevant and helpful to the defense of an accused or is essential to a fair determination of cause. (*Roviaro*, 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623.) A judge's discretion is not abused in respecting the informer's privilege where he

believes truthful evidence was given in open court by officers under oath and subject to cross-examination as to what the informer told them and why they believed his information was trustworthy. *McCray,* 386 U.S. at 313, 18 L. Ed. 2d at 72, 87 S. Ct. at 1063.

■ The defendant here did not meet his burden of showing the need for disclosure of the informant's identity. The request for disclosure here related to the preliminary issue of probable cause and not the fundamental question of the defendant's guilt or innocence. There is no indication the court here found Detective Kuchoukos was less than credible and, thus, would have needed to have the informant's identity revealed in order to decide whether Kuchoukos was credible. Kuchoukos was subject to cross-examination and was questioned about why he believed the informant's information was "true and correct." He stated his belief was based on the informant's past prior reliable information to him. Kuchoukos' affidavit related the informant had provided him information regarding narcotics trafficking which had resulted in the discovery of contraband (cocaine) on three occasions and arrests were made which were then pending in Cook County courts. "The deliberate falsity or reckless disregard whose impeachment is permitted [in a *Franks* hearing] *** is only that of the affiant, not of any non-governmental informant." (*Franks,* 438 U.S. at 171, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684; *People v. Martin* (1986), 148 Ill. App. 3d 1061.) "[T]he [judge issuing the warrant] is concerned not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told." *McCray,* 386 U.S. at 307, 18 L. Ed. 2d at 69, 87 S. Ct. at 1060.

Further, there was ample evidence at the hearing which showed the informant was reliable and his information credible. Officers executing the warrant found a scale and a large amount of cocaine during the search. The informant's description of the defendant to Kuchoukos was detailed and was more accurate than the most recent LEEDS description of the defendant which showed his weight as being 60 to 70 pounds less than it actually was. That Kuchoukos could not specifically recall looking in the refrigerator can be attributed to the fact the defendant admitted there were weapons and contraband on the premises, and he directed the officers to the second floor and the basement. Further, Kuchoukos was assisted by other officers in the search who may have checked the refrigerator.

We conclude the defendant was not deprived of a fair *Franks* hearing because the court denied his request for disclosure of the informant's identity.

### FRANKS HEARING DIRECTED FINDING

The defendant next contends the court erred in directing a finding for the State at the conclusion of his evidence in the *Franks* hearing after it initially found that he had made a substantial preliminary showing that the affidavit for the search warrant was false and granted him the evidentiary hearing. He also contends the court improperly restricted the scope of the hearing.

██ Neither a mere request nor a defendant's unsubstantiated denial will warrant a *Franks* hearing. (*People v. Lucente* (1986), 116 Ill. 2d 133.) Rather, *Franks* requires the defendant to make a "substantial preliminary showing" that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit. "The purpose of [this] requirement is to discourage abuse of the hearing process and to enable spurious claims to 'wash out at an early stage.' [Citation.]" (*Lucente*, 116 Ill. 2d at 151.) Then, at the hearing itself, the defendant must prove his claim of perjury by a preponderance of the evidence. (*Lucente*, 116 Ill. 2d at 151; *Franks*, 438 U.S. at 156, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676.) As to whether there has been a "substantial preliminary showing," an alibi-type showing may be sufficient; the determination is based on the balancing of the statements in the warrant affidavit versus those in support of the defendant's challenge to the warrant. (*Lucente*, 116 Ill. 2d at 152.) In balancing these statements, the court is to keep in mind the presumption of validity of the search warrant and the limited extent of the right to veracity challenges which is provided by *Franks*. The court must also keep in mind the defendant's guilt or innocence is not being decided but, rather, whether the exclusionary rule should be employed to suppress evidence as a sanction for an alleged fourth amendment violation. "So long as the trial court's judgment is exercised within permissible limits, [the court's] judgment will not be disturbed." *Lucente*, 116 Ill. 2d at 153; *People v. Tovar* (1988), 169 Ill. App. 3d 986, 990-93.

The court in *Lucente* decided not to disturb the trial judge's conclusion there that an evidentiary hearing was warranted where the defendant made an alibi-type showing corroborated by two other affidavits. The court noted the defendant's affidavits could have come from persons less interested than his wife and sister and could have included information relating to the impossibility of the informant's access to the apartment as it was described in the warrant affidavit. Nevertheless, the defendant's effort amounted to more than a "mere denial." (*Lucente*, 116 Ill. 2d at 154.) The court also noted the affiant's position would have been stronger if he had provided some inde-

pendent corroboration of the informant's statements. Further, it noted that the trial court's criticism of the State's evasiveness in providing support for the officer's affidavit may have led the trial judge to doubt the veracity of the warrant affidavit.

Similarly here, the defendant's affidavit was supported by the sworn affidavits of his friends Philips, Kurtz, the Clausses, and his girlfriend, Sharon Freeman, all of whom could be considered "interested" persons. Notably, Oakes, whom the defendant did not know before that evening, did not file an affidavit. Its absence was possibly attributable to his unsettled marital status and related lack of an address. (See *Franks*, 438 U.S. at 171, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684.) As in *Lucente*, defendant's effort here was more than a "mere denial." As to the officer's affidavit, the only independent corroboration of the informant's statements undertaken by Kuchoukos appears to have been his attempt to verify residency with the Hanover Park police, an effort which, according to Freeman's testimony, would not have yielded the defendant's name but either hers or her brother's. As to the State's "evasiveness," there was a delay in obtaining the confidential informant file for an *in camera* inspection despite the fact the file clearly was included in a *subpoena duces tecum* directed to Kuchoukos. The court here identified the "generality of the time" the transaction allegedly occurred as a "problem," and granted the defendant a hearing for the specific purpose of clarifying if possible the allegation that the transaction occurred "in the early morning hours."

■■ That the court identified this "problem" distinguishes the instant cause from *People v. Martine* (1985), 106 Ill. 2d 429, relied on by the State, where the defendant's affidavits did not explain how she could not have sold cocaine to the informant on the day in question as alleged in the officer's affidavit. The court there determined her attack on the warrant affidavit showed nothing more than her desire to engage in discovery and cross-examination of the officer. (*Martine*, 106 Ill. 2d at 436.) On balancing the affiant's statements and the statements in the defendant's supporting affidavits at bar, we believe the court's grant of a hearing was within the "permissible limits" described in *Lucente*. *Lucente*, 116 Ill. 2d at 153.

■■ The defendant has waived the issue of the limited scope of the hearing by his failure to object at trial and to raise the issue in his post-trial motion. The defendant's contention the scope of the hearing was improperly limited is based on the fact the court sustained the State's objections to defendant's questions to Kuchoukos concerning his prior contacts with the informant, whether the informant was in-

volved in drug trafficking, what attempts, if any, Kuchoukos had made to corroborate whether the informant actually had made the purchase, and questioning of Kuchoukos' supervisor as to whether he signed a report concerning surveillance of the defendant. The defendant presents no argument in reply to the State's waiver argument, however, and the only "problem" the court could discern with the Kuchoukos affidavit was the generality of the time period. Accordingly, it granted defendant a *Franks* hearing to examine that point and, if necessary, to take it "step by step" from there. The areas of questioning which the court restricted here are of a type properly within the scope of a *Franks* hearing. (*Cf. People v. Allen* (1987), 158 Ill. App. 3d 602, 607, citing *McCray*, 386 U.S. at 316, 18 L. Ed. 2d at 74, 87 S. Ct. at 1065 (Douglas, J., with Warren, C.J., and Brennan and Fortas, JJ., dissenting) ("It is not unknown for the arresting officer to misrepresent his connection with [the] informer, his knowledge of the informer's reliability or the information allegedly obtained from the informer"); see also *Lucente*, 116 Ill. 2d at 141-43; *People v. Wilder* (1981), 98 Ill. App. 3d 26 (where refusal to allow defendant at the suppression hearing to ask arresting officer names of persons allegedly arrested in the past based upon informer's information was not abuse of discretion where officer was a credible witness).) However, except for the time period which he himself termed "critical," the defendant did not otherwise raise the issue of the restricted scope of the hearing at trial, and it was within the trial court's discretion to so restrict it.

■ Turning to the question of whether the court's directed finding for the State at the close of the defendant's evidence was error, a trial court's decision in a nonjury case on a motion for directed finding at the close on the nonmovant's case should not be reversed unless it is contrary to the manifest weight of the evidence. (See *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151; *Greenwald v. Spring Hill Ford, Inc.* (1988), 173 Ill. App. 3d 857, 861.) In order to prevail in the *Franks* hearing, the defendant had to prove by a preponderance of the evidence that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit. *Franks*, 438 U.S. at 156, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676; *Lucente*, 116 Ill. 2d at 151; *People v. Abata* (1985), 136 Ill. App. 3d 57, 61, 63.

The defendant failed to sustain his burden of proof. The court, after hearing the defendant's evidence and weighing the credibility of the witnesses, determined the defendant's witnesses were not credible. Further, there were gaps in the defendant's evidence as to his

whereabouts during the early morning hours of March 6 which were large enough to account for the early morning sale of cocaine to Kuchoukos' informant. These gaps include one at the Fizz in that Philips admitted the defendant may have left his presence to go to the bathroom. The defendant's residence was located only about 10 minutes round trip from the Fizz. Sharon Freeman admitted she could not see the refrigerator in the kitchen from where she and Jeanine Clauss were sitting playing cards, and both women periodically attended to their laundry in order to change loads, etc. Freeman also admitted she did not know what the defendant may have done between the hours of 5 a.m. and noon on March 6 because she was sleeping. The testimony of several of the defendant's witnesses was contrary to their sworn affidavits, and testimony of the witnesses at the hearing conflicted.

■ We conclude the court's directed finding in the State's favor at the conclusion of the defendant's evidence was not against the manifest weight of the evidence.

### PROBABLE CAUSE/GOOD-FAITH SEARCH

The defendant's next contention is that the complaint for the search warrant was insufficient to establish probable cause for the search when considered on its face and when viewed in light of the evidence presented at the pretrial hearing. Defendant points to lack of police corroboration of the informant's tip or any other substantial basis upon which the hearsay tip could have been credited. Defendant concludes it was error for the court to fail to quash the warrant and suppress the evidence obtained in the search where the search otherwise was not justified as being made in good faith.

■ The State submits the complaint for search warrant was more than sufficient to establish probable cause for the issuance of the warrant. Alternatively, the State submits the officer's good-faith reliance on the warrant was sufficient to permit admission of the evidence obtained during the search. We agree with the State that the officer's complaint was more than sufficient to establish probable cause for issuance of the warrant.

■ A complaint may be based on hearsay information and need not reflect the direct personal observations of the affiant. (*Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514.) Aguilar's strict two-pronged test of "veracity" and "basis of knowledge" applied to such informers in undertaking a probable cause analysis, however, was abandoned by the court in *Illinois v. Gates* (1983), 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct.

2317, 2332, and the "totality-of-the-circumstances" analysis reaffirmed. In *People v. Tisler* (1984), 103 Ill. 2d 226, the Illinois Supreme Court adopted *Gates*' "totality-of-the-circumstances" approach. Under that approach:

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for *** conclud[ing]' that probable cause existed. [Citation.]" *Gates*, 462 U.S. at 238-39, 76 L. Ed. 2d at 548, 103 S. Ct. at 2332.

The court also noted its repeated admonition that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' [Citation.]" *Gates*, 462 U.S. at 236, 76 L. Ed. 2d at 546-47, 103 S. Ct. at 2331.

Based on language in *Gates* which indicates that corroboration of the informer's tip by independent police work is "important" in determining whether to give credence to the tip, the defendant asks this court to find there was no probable cause for the issuance of the search warrant at bar because there was no independent corroboration. Although *Gates* does acknowledge and discuss the value of independent corroboration of an informer's tip (462 U.S. at 241-46, 76 L. Ed. 2d at 550-53, 103 S. Ct. at 2333-36), it clearly imposes no absolute requirement that such tips be independently corroborated where, under the totality-of-the-circumstances analysis, there are otherwise sufficient facts alleged as to the informer's reliability and basis of knowledge so as to enable the issuing judge to determine there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates* provides that a deficiency in an informant's reliability, veracity, or basis of knowledge could be compensated for in determining the overall reliability of a tip by a strong showing as to one of the other elements or by some other indicia of reliability. *Gates*, 462 U.S. at 233, 76 L. Ed. 2d at 545, 103 S. Ct. at 2329.

*Gates* ascribed particular importance to the independent corroboration of the tip in that case because the tip was from an anonymous informer whose veracity could not otherwise be ascertained. Similarly, in *People v. Broge* (1987), 159 Ill. App. 3d 127, relied on by defendant here, the court found no probable cause for the defendant's arrest

where there was no evidence the prostitute informants were trustworthy nor was there any evidence of independent police investigation which corroborated details of their story. *People v. Clark* (1981), 95 Ill. App. 3d 496, and *People v. Horton* (1979), 74 Ill. App. 3d 293, also relied on by the defendant, both predate *Gates* and provide no support for defendant's position where, in *Clark*, there was no allegation the informant had been successfully used on other occasions (*Clark*, 95 Ill. App. 3d at 499), and in *Horton*, there was no indication of the nature of the information supplied or what, if any, action was taken thereon (*Horton*, 74 Ill. App. 3d at 294).

In contrast here, details of the informant's reliability and the basis of his knowledge were included in Kuchoukos' affidavit and provided the substantial basis necessary for the issuing judge to find probable cause. The same type of past experience with the informant which was set forth in Kuchoukos' affidavit, as well as the same type of facts concerning the basis of the informant's knowledge, was found sufficient to establish probable cause in the recent case *People v. Tovar* (1988), 169 Ill. App. 3d 986.

We conclude the defendant's contention the complaint was facially insufficient is without merit. In light of the above discussion, defendant's further contention Kuchoukos' testimony at the *Franks* hearing also did not show independent corroboration is likewise without merit. Defendant's contention is further without merit since it is elementary that in passing on the validity of a warrant, a reviewing court may consider only the information brought before the judge when the warrant was issued. (*People v. Tyler* (1984), 128 Ill. App. 3d 1080.) Moreover, inasmuch as the warrant was based on probable cause, it is unnecessary for the court to consider the question of the applicability of the good-faith exception to the exclusionary rule whereby evidence seized pursuant to a warrant later invalidated may nonetheless be used at trial. See *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405; *People v. Stewart* (1984), 104 Ill. 2d 463.

We conclude the complaint for search warrant established probable cause and, thus, the evidence seized during the search was properly admitted at trial.

### OVERBROAD WARRANT

Defendant contends the search warrant was insufficiently particular in describing the premises to be searched in that it specified only the "multi-family structure, located at 6255 Nugget." This is the first time defendant has raised this issue, however, and we agree with the State that the issue has been waived.

■■ The supreme court recently held in *People v. Enoch* (1988), 122 Ill. 2d 176, 185-88, that in jury and non-jury cases, both a trial objection and a written post-trial motion raising the issue are required in order to preserve alleged errors that could have been raised during trial. Defendant neither raised this objection at trial nor included it in his post-trial motion, and, in fact, defendant does not reply to the State's waiver argument. Accordingly, the issue is waived.

### DUE PROCESS

Defendant contends he was deprived of his right to due process of law in that the court was influenced by its *ex parte* communications with police officers during its *in camera* review of the informant's file and, as shown by excerpts of comments made by the judge at trial, by predetermining the issues against him at the *Franks* hearing. The State contends the defendant has waived this issue under *People v. Enoch* (1988), 122 Ill. 2d 176, and we agree.

■■ Defendant raises these points here for the first time. They were not brought to the attention of the judge during trial, nor were they included in his post-trial motion. Defendant does suggest the *ex parte* communications issue should be reviewed as plain error since the communications occurred during *in camera* proceedings which were not recorded in contravention of Supreme Court Rule 415 (107 Ill. 2d R. 415(f)). However, defendant made no request to either be present at the *in camera* proceedings or asked that a record be made. (See *People v. Coates* (1985), 109 Ill. 2d 431.) Moreover, defendant presents no citation of relevant authority in support of his plain error argument, save for a reference generally to Supreme Court Rule 615 (107 Ill. 2d R. 615), thus waiving that issue as well. (107 Ill. 2d R. 341(e)(7).) Finally, as the State also points out, the instant cause was not a closely balanced case which would warrant application of the plain error rule. This issue is waived.

### FIFTH AMENDMENT

The defendant next contends he was deprived of a fair *Franks* hearing where the State persisted in questioning his girlfriend on matters to which she asserted the fifth amendment. (U.S. Const., amend. V.) The State contends this issue has also been waived inasmuch as defendant's objections to various of the State's questions posed to Sharon Freeman on cross-examination were not based on the ground asserted here.

■■ It is well established that a specific objection operates as a waiver of all grounds not specified in the objection. (*People v. Soskins*

(1984), 128 Ill. App. 3d 564.) Further, the defendant did not include this issue in his post-trial motion, thus waiving it. (*People v. Enoch* (1988), 122 Ill. 2d 176.) *People v. Godsey* (1978), 74 Ill. 2d 64, cited by the defendant in support of his assertion the prosecutor's conduct was "serious error which warrants reversal," is distinguishable. First, *Godsey* was a jury trial where there was a greater potential for prejudical impact. Second, the error which the court considered to be plain error was the prosecutor's conduct in making repeated references to the witness', the defendant's wife's, silence before the grand jury where she relied on the fifth amendment in refusing to answer certain questions. The court found there was no justification whatsoever for such impeachment where no attempt was made by the prosecution to establish any threshold inconsistency between the testimony of the defendant's wife at trial and her silence before the grand jury. (74 Ill. 2d at 72.) The prosecutor's questions here were not impeaching, but properly sought to expose Freeman's bias and interest. Again, too, the instant cause is not a closely balanced one which would warrant application of the plain error rule.

## INTENT TO DELIVER

Defendant's final contention is that the State failed to prove beyond a reasonable doubt his intent to deliver the substances rather than merely possess them for his personal use.

Intent to deliver is necessarily proved by circumstantial evidence (*People v. Cruz* (1984), 129 Ill. App. 3d 278), and a reasonable inference of intent to deliver narcotics arises from the possession of contraband in excess of any amount that could be designed for personal use. (*People v. Chrisos* (1986), 151 Ill. App. 3d 142; *People v. Knight* (1985), 133 Ill. App. 3d 248; *People v. Kline* (1976), 41 Ill. App. 3d 261.) The inference of intent may be enhanced by the combination of drugs and the manner in which they are kept. (*People v. Hunter* (1984), 124 Ill. App. 3d 516.) The fact that a scale, a large amount of cash, and a handgun were also found—similar to the items found here—has been considered to be circumstantial evidence that the contraband was possessed with intent to deliver. *People v. Stamps* (1982), 108 Ill. App. 3d 280, 295.

Defendant's contention the amount of the contraband discovered here (69.5 grams of cocaine and 333.2 grams of cannabis) was not so large as to warrant the inference of intent to deliver is without merit. Defendant compares the instant amounts to the 250.1 grams of cocaine in *People v. Munoz* (1982), 103 Ill. App. 3d 1080, and the 6443.33 grams of cannabis in *People v. Kline* (1976), 41 Ill. App. 3d

261, in support of his position. However, intent to deliver has been found in cases involving lesser amounts of cocaine. (*People v. Tovar* (1988), 169 Ill. App. 3d 986 (31.9 grams); *People v. Schaefer* (1985), 133 Ill. App. 3d 697 (21.9 grams).) Although the amount of cannabis here was not as large as that found in *Kline*, the substance was packaged in three separate packages of 92.9, 107.6 and 101.6 grams and was found under a stairwell in the basement. A smaller package containing 31.1 grams of cannabis was found under the bed in the bedroom. The street value of the cannabis was $1,600. Based on these circumstances, in addition to the gram scale, handguns and cash found ($2,480), it was reasonable for the court to draw the inference that the defendant possessed the cocaine and cannabis with the intent to deliver.

We conclude the State's evidence was sufficient to prove the defendant guilty beyond a reasonable doubt of possession with intent to deliver.

The defendant's appeal from the judgment of the circuit court of Du Page County revoking his probation in trial court case No. 84—CF—906 is dismissed. The judgments of the circuit court of Du Page County finding the defendant guilty of possession of cocaine and cannabis with intent to deliver are affirmed.

Affirmed in part; dismissed in part.

DUNN and INGLIS, JJ., concur.