THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRACEY THOMAS, Defendant-Appellant.

First District (1st Division)   No. 1—89—1804

Opinion filed March 31, 1994.—Rehearing denied May 18, 1994.

Randolph N. Stone, Public Defender, of Chicago (Robert T. Fox and Jeffrey M. Howard, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael P. Latz, and Jeffrey J. Wawrzyniak, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

After a jury trial, defendant Tracey Thomas was found guilty of possession of a controlled substance with intent to deliver. The circuit court sentenced defendant to four years in the Illinois Department of Corrections. Defendant appeals his conviction and sentence. Pursuant to Illinois Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)), we reduce defendant's conviction of possession with intent to deliver a controlled substance to unlawful possession of a controlled substance because the State failed to prove the element of intent to deliver, but did prove all the elements of unlawful possession. We further vacate defendant's sentence based on the intent to deliver conviction and remand this cause for a new sentencing hearing based on the conviction of unlawful possession of a controlled substance.

At trial, Officer Charles Toussas, a witness for the State, testified that on November 11, 1987, at about 9:45 p.m. he and Officer William Taylor were in plain clothes on foot patrol at a Chicago Housing Authority building located at 1319 South Washtenaw when they saw a black male, Michael Tripplett, in front of apartment 202 counting packets containing white powder. Toussas testified that in his nine years as a Chicago police officer, he had seen the same type of small packet hundreds of times and that they usually contained narcotics. When Toussas was 10 to 12 feet from Tripplett, he yelled, "Police." Tripplett turned and ran into apartment 202 with Toussas in pursuit. Toussas grabbed Tripplett at the threshold of the last bedroom, where he saw defendant seated on the bed with a tray in front of him and a shotgun lying next to him. There were several small packets and a pile of white powder from which defendant was filling the packets on the tray. When defendant saw Toussas, he threw the packets under the bed and knocked the tray and the shotgun onto the floor. Toussas testified that he entered the bedroom and recovered 27 packets of white powder. He also confiscated the loaded shotgun as well as boxes of live shotgun shells.

Officer Taylor also testified for the State and his testimony corroborated that of Toussas. However, during Taylor's testimony, defendant objected to references to the shotgun. The circuit court overruled the objections, but stated:

"The court will admonish the jury that the jury is not to consider [the shotgun] relative to any other offenses. The Defendant is charged only with the offense which the Court has read to you as the charge in the case, and the Court will indicate [the shotgun] is only being allowed and used relative to the circumstances involved at the time that the Defendant was arrested. The jury may hear testimony regarding the circumstances at the time of the arrest of the defendant."

Next, Chicago police department chemist Fumni Moka testified that she performed tests on the white substance contained in the small packets and found it to be cocaine. The confiscated cocaine amounted to 5.5 grams.

Defendant testified, as the sole witness in his case in chief, that his apartment contained four bedrooms, two on the left side of the hallway and two on the right side. The last bedroom on the left belonged to defendant and the bedroom on the right belonged to his brother, Frank Collins. Defendant stated that Tripplett and Collins were in Collins' bedroom before Tripplett left the apartment. Shortly thereafter, while he, Collins and another friend were in the front room watching television, Tripplett came back into the apartment and ran down the hall with Toussas and Taylor in pursuit. Defendant also testified that Tripplett was arrested in Collins' room, where he was searched and packets were found on his person. Defendant testified that he did not throw a tray onto the floor or see the shotgun or any drugs until the officers carried them out of the bedroom.

Toussas testified in rebuttal that defendant was the only person in the back bedroom when he apprehended Tripplett. He added that Collins was arrested only because he became abusive when the officers attempted to exit the apartment. The State rested.

During closing argument, the State made references to the shotgun found near defendant at the time of the arrest. The circuit court, again, admonished the jury that the shotgun was only admitted to demonstrate the circumstances at the time of the arrest.

While deliberating, the jury sent a note to the circuit court requesting a transcript of defendant's testimony. The circuit court, without objection from the State or defendant, responded that such a transcript was not available.

After deliberations, the jury returned with two guilty verdicts, one for possession and the other for possession with intent to deliver. The circuit court returned the verdicts to the jury and instructed it to determine whether defendant was guilty of the greater or lesser offense. The jury returned the second time with a guilty verdict of possession with intent to deliver.

At the sentencing hearing, the circuit court heard factors in aggravation and mitigation. The State correctly pointed out that defendant did not have any prior felony or misdemeanor convictions. Before requesting the minimum sentence, defendant emphasized that he had made every one of the over 20 court appearances. The circuit court found that defendant was not eligible for probation because of the statutory provision regarding an amount of more than five grams of a controlled substance. Then, the circuit court stated that the minimum sentence of four years in prison would serve justice.

On appeal, defendant argues that he was not proven guilty beyond a reasonable doubt of possession with intent to deliver a controlled substance. A reviewing court should not set aside a criminal conviction unless the evidence is so improbable that it creates a reasonable doubt of guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) On appeal, a court must determine, after viewing the evidence in a light most favorable to the State, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453; *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.

In order to prove the crime of possession with the intent to deliver a controlled substance, the State must show possession by proving that defendant had knowledge of the drugs and immediate and exclusive control of them. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361.) The State must also prove that defendant had the intent to deliver, which is necessarily proved by circumstantial evidence. (*People v. Friend* (1988), 177 Ill. App. 3d 1002, 533 N.E.2d 409.) A reasonable inference of intent to deliver a controlled substance arises where the amount of narcotics possessed could not be viewed as designed for personal consumption. (*People v. Chrisos* (1986), 151 Ill. App. 3d 142, 502 N.E.2d 1158.) However, the inference to be drawn from the amount of controlled substance possessed must be judged on a case-to-case basis. (*People v. Kline* (1976), 41 Ill. App. 3d 261, 354 N.E.2d 46.) Such an inference may be enhanced by the combination of drugs and the manner in which the narcotics are kept. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 464 N.E.2d 659.) The presence of weapons, paraphernalia used in the sale of narcotics such as scales, and large amounts of cash may be considered to be circumstantial evidence that the contraband was possessed with intent to deliver. *Friend*, 177 Ill. App. 3d at 1021, 533 N.E.2d at 549, citing *People v. Stamps* (1982), 108 Ill. App. 3d 280, 295, 438 N.E.2d 1282, 1295.

In the present case, defendant was arrested when he was found sitting on a bed with a tray in front of him containing a pile of white

powder which he was allegedly using to fill individual packets and with a loaded shotgun lying nearby. The police confiscated 5.5 grams of cocaine contained in 27 individual packets. The State argues that factors supporting an inference of intent to deliver in this case are that defendant was in possession of 5.5 grams of cocaine with which he was filling small packets, that no drug-user paraphernalia was found and that a loaded gun was nearby.

The State relies on two cases as precedent for affirming defendant's intent to deliver conviction. Those cases are distinguishable. In *People v. Berry* (1990), 198 Ill. App. 3d 24, 555 N.E.2d 434, although defendant was in possession of only 3.9 grams of cocaine, the police also found two sealed envelopes, each containing $1,000 in varying denominations in the defendant's left coat pocket, $1,016 in his right rear pocket and in his left rear pocket, a plastic bag containing marijuana and $135. The large amounts of money, coupled with the combination of narcotics, cocaine and marijuana, was enough to support the inference of intent to deliver in *Berry*. In *People v. LeCour* (1988), 172 Ill. App. 3d 878, 527 N.E.2d 125, the defendant was found in possession of only 3.3 grams of cocaine, but his intent to deliver conviction was upheld even though no amount of large currency, weapons or drug paraphernalia used for selling narcotics were recovered from the defendant. There was, however, testimony of a purchaser that a day before the defendant's arrest he had reached the defendant by using a telephone pager, requested cocaine and the defendant delivered a gram of cocaine to him. The purchaser further testified that the next day he again contacted the defendant through the pager. The defendant agreed to bring 3.3 grams of cocaine to a specific location. The defendant brought that amount to the specified site. Although the transaction was not consummated, the inference that the defendant intended to deliver the cocaine was "clearly supported by [the witness'] testimony regarding his contacts with [the] defendant." (*LeCour*, 172 Ill. App. 3d at 886, 527 N.E.2d at 130.) The case at bar lacks the strong evidence of intent to deliver found in *Berry* and *LeCour*.

This case, instead, is analogous to *People v. Crenshaw* (1990), 202 Ill. App. 3d 432, 559 N.E.2d 1051, in which the defendant was arrested while in a vehicle and found in possession of 22 packets containing a total of 11.2 grams of cocaine and an undisclosed amount of money. A loaded revolver was also recovered from under the driver's seat. The appellate court reversed the defendant's intent to deliver conviction reasoning that the gun found under the seat of the car could not serve as evidence of intent to deliver because the ownership of the weapon and vehicle was unknown. Further, the money found

was of no significance because the amount was never determined. The appellate court also noted that no other narcotics were found in the defendant's possession. *Crenshaw*, 202 Ill. App. 3d at 436, 559 N.E.2d at 1054.

■ Similarly, in the case at bar, defendant was not found in possession of a combination of narcotics or any significant amount of money which could lead to an inference of intent to deliver. Although there was testimony that defendant was filling packets from a pile of white powder, no scales for weighing the narcotics were found. Moreover, not only did the State fail to establish ownership of the shotgun, it failed to show that defendant had even handled it by neglecting to introduce evidence that his fingerprints were present on the weapon. Thus, the only evidence that is left to consider is the amount of cocaine found in defendant's possession. We find that an amount of 5.5 grams of cocaine, by itself, does not give rise to an inference of intent to deliver.

After viewing the evidence in a light most favorable to the State, we find that there was insufficient evidence to support the inference of intent to deliver and that, therefore, no rational trier of fact could have found that defendant had the requisite intent to deliver. Notwithstanding the above finding, the State did prove the necessary elements of unlawful possession of a controlled substance. Since the State did prove all the elements of possession, we reduce defendant's conviction, pursuant to Illinois Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)), to unlawful possession of a controlled substance, vacate his sentence based on the conviction of intent to deliver and remand this cause for a new sentencing hearing on the conviction of unlawful possession.

Next, defendant argues that he was denied a fair trial by virtue of the State's repetitive improper questioning regarding the shotgun and the bag of cocaine and by virtue of the State's closing argument. In Illinois, the State may not persistently ask questions after an objection has been sustained. (*People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68.) Defendant cites cases in which prosecutorial questioning directly violated a court's ruling thereby causing enough prejudice to the defendant to warrant granting him a new trial. (See *People v. Lewis* (1972), 6 Ill. App. 3d 101, 285 N.E.2d 168; *People v. Mendiola* (1988), 171 Ill. App. 3d 936, 526 N.E.2d 172.) For example, in *Mendiola*, the State asked a series of questions which flagrantly violated the circuit court's previous ruling that a specific subject matter was irrelevant and inadmissible. As a result, the appellate court found that the defendant was entitled to a new trial. *Mendiola*, 171 Ill. App. 3d at 946-47, 526 N.E.2d at 179.

■ The circumstances in the instant case differ from those in the cases cited by defendant in that, here, the circuit court never ruled that the subject matter of the shotgun or the bag of cocaine was irrelevant. In regards to the shotgun, we do find that it was irrelevant and inadmissible because the State failed to prove its ownership or, in the alternative, that defendant's fingerprints were found on it. Nevertheless, even without considering the evidence of the shotgun, the State did prove the elements of unlawful possession of a controlled substance and, therefore, the reduction of his conviction is unaffected by our finding of inadmissibility. Since the evidence of the shotgun did not prejudice the finding of all the elements of unlawful possession, defendant is not entitled to a new trial based on the State's reference or questions on that matter. Furthermore, after reviewing the record, we find that evidence of the bag of cocaine was admissible and, therefore, such evidence did not deny defendant his right to a fair trial.

■ Now, turning to the issue of whether closing argument denied defendant a fair trial, a review of the record demonstrates that the circuit court not only properly ruled on defendant's objections during argument, but again appropriately admonished the jury. The circuit court admonished the jury that closing argument was just that, argument based on the evidence, and that if argument was not based on facts in evidence, such argument must be disregarded. Defendant would have this court believe that the State repetitively and flagrantly made arguments which the circuit court had ruled to be improper. We have found nothing in the record which indicates that the State purposefully violated the circuit court's rulings or that the State's closing argument denied defendant a fair trial. Accordingly, we find that defendant is not entitled to a new trial.

■ Defendant's next argument on appeal is that the circuit court erroneously failed to provide the jury with a transcript of defendant's testimony when it requested one during deliberations. We hold that defendant has waived this issue for appeal. Defendant waived the issue by acquiescing when the circuit court refused to send the jury the requested transcript of defendant's testimony. (See *People v. Coleman* (1989), 179 Ill. App. 3d 410, 534 N.E.2d 583.) Not only did defendant fail to make a contemporaneous trial objection, he also failed to include the issue in his written post-trial motion, which also constitutes a waiver of the issue. See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

■ Lastly, defendant argues that the statute under which he was sentenced for the crime of intent to deliver a controlled substance is unconstitutional and imposes a punishment disproportionate to the

crime committed. (Ill. Rev. Stat. 1987, ch. 56$^1$/$_2$, par. 1401(b)(2) (now 720 ILCS 570/401(c)(2) (West 1992)).) Since we have reduced defendant's conviction and remanded this cause for a new sentencing hearing, this issue is moot.

For the foregoing reasons, the conviction of the circuit court of Cook County for possession with intent to deliver a controlled substance is reduced to unlawful possession of a controlled substance, defendant's sentence is vacated and this cause is remanded for a new sentencing hearing based on the conviction of unlawful possession.

Conviction reduced; sentence vacated and cause remanded for a new sentencing hearing.

CAMPBELL, P.J., and MANNING, J., concur.